# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 19-1141V
Filed: January 2, 2024

```
* * * * * * * * * * * * *
SAMANTHA HALL,              *
                            *
            Petitioner,     *
                            *
v.                          *
                            *
SECRETARY OF HEALTH         *
AND HUMAN SERVICES,         *
                            *
            Respondent.     *
* * * * * * * * * * * * *
```

*Mark Sadaka, Esq.,* Law Offices of Sadaka Associates, LLC, Englewood, NJ, for petitioner.
*Mallori Openchowski, Esq.,* U.S. Dept. of Justice, Washington, DC, for respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth,** Special Master:

On August 6, 2019, Samantha Hall ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program"). Petitioner alleged that she developed "neurally-modulated syncope" after receiving the human papillomavirus ("HPV" or "Gardasil") vaccine on August 9, 2016. Petition, ECF No 1. A decision was issued dismissing the case for insufficient proof on March 25, 2021. ECF No. 39.

On March 26, 2021, petitioner filed a Motion for Attorneys' Fees and Costs. ECF No. 41 ("Fees Motion"). On April 19, 2021, respondent filed a response opposing petitioner's Motion and raising an objection as to reasonable basis in the filing of the petition. ECF No. 44 ("Response").

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned finds that the identified material fits within this definition, such material will be redacted from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Petitioner filed a reply on the same date, relying on the information provided in her Motion. ECF No. 45 ("Reply"). After being ordered to substantively address the issue of reasonable basis, respondent filed a second response on May 19, 2021. ECF No. 46; Supplemental Response ("Supp. Response"), ECF No. 47. Petitioner filed a second reply on May 26, 2021. Supplemental Reply ("Supp. Reply"), ECF No. 48.

Petitioner seeks attorneys' fees and costs in the total amount of **$25,295.73**, representing $24,466.55 in attorneys' fees and $829.18 in costs. *See* Fees Motion at 14-15.

After careful consideration, petitioner's Motion for Attorneys' Fees and Costs is **GRANTED** for the reasons set forth below.

## I.      Procedural History

Petitioner filed her claim on August 6, 2019, alleging that she suffered "neurally modulated syncope" as a result of the HPV vaccine she received on August 9, 2016. *See* Petition at 1, ECF No. 1. Petitioner filed medical records and a Statement of Completion on August 16, 2019. Petitioner's Exhibits ("Pet. Ex.") 1-6, ECF Nos. 7-10.

A Special Processing Unit ("SPU") status conference was held on October 23, 2019, after which petitioner was ordered to file updated medical records. Respondent was ordered to file a status report on the status of his medical review of the case. ECF No. 11. Respondent filed his status report on November 7, 2019, noting several additional outstanding records and requesting a suspension of the deadline for his Rule 4(c) Report until all records were filed. ECF No. 12.

After one Motion for extension of time, which was granted, petitioner filed additional medical records on February 14, 2020. ECF No. 17. On the same date, she filed another Motion for extension of time within which to file medical records, along with a Motion to issue subpoena for outstanding records. ECF Nos. 18-19. Both Motions were granted. ECF Nos. 20-21.

Additional motions for extension of time were filed and granted. ECF Nos. 24, 26. On June 15, 2020, petitioner filed medical records, an affidavit from petitioner's mother, and a Statement of Completion. Pet. Ex. 8, ECF No. 27; ECF Nos. 28-29.

Respondent filed his Rule 4(c) Report on August 27, 2020, recommending against compensation. ECF No. 31. The case was then reassigned to the undersigned. ECF No. 33.

A status conference was held on October 27, 2020, during which the onset of petitioner's syncope and Table claim were discussed. ECF No. 34. Notably, the contemporaneous medical records documented onset of her syncope four to five hours after vaccination based on reports of petitioner's mother to her medical providers at her time of presentation to the emergency room and to various medical providers thereafter. Petitioner was ordered to submit an affidavit detailing her recollection of the onset of her first syncopal episode, as well as any documentation related to onset that she intended to file.

2

Petitioner filed Motions for extension of time thereafter for the filings ordered which were granted. ECF Nos. 35-36. On March 15, 2021, petitioner filed another Motion for extension of time, advising that petitioner was now uncertain whether she wished to continue with the case and requesting additional time to either file the outstanding documentation or a Motion to Dismiss. ECF No. 37. The Motion was granted.

Petitioner filed her Motion for Dismissal Decision on March 24, 2021. ECF No. 38. A Dismissal Decision issued on March 25, 2021, dismissing the case for insufficient proof. ECF No. 39. The parties filed a joint notice not to seek review the following day. ECF No. 40.

On March 26, 2021, petitioner filed a Motion for Attorneys' Fees and Costs. Fees Motion, ECF No. 41. On April 19, 2021, respondent filed a response in opposition raising reasonable basis in the filing of the petition. Response, ECF No. 44. Petitioner filed a reply relying on the information provided in her Motion. Reply, ECF No. 45. After being ordered to substantively address the issue of reasonable basis, respondent filed a second response on May 19, 2021. ECF No. 46; Supp. Response, ECF No. 47. Petitioner filed a second reply on May 26, 2021. Supp. Reply, ECF No. 48.

Petitioner seeks attorneys' fees and costs in the total amount of **$25,295.73**, representing $24,466.55 in attorneys' fees and $829.18 in costs. *See* Fees Motion at 14-15.

This matter is ripe for consideration.

## II.     Factual Background

Petitioner was determined to be a well teen at her checkup on August 4, 2016. She was 16 years old. Pet. Ex. 4 at 13.

Petitioner received the subject HPV vaccination on August 9, 2016. Pet. Ex. 4 at 15. She presented to the emergency room that evening reporting, "multiple syncopal episodes" that occurred "1 hour PTA" (prior to arrival). Pet. Ex. 3 at 17. Her mother was concerned the episodes were related to the HPV vaccine. *Id*. She reportedly had two episodes while seated and one while standing and hit her head on the table. She had no vomiting or confusion but was lightheaded. *Id*. IV saline was administered, and she was admitted for observation. *Id*. at 20.

Petitioner's mother reported to the attending physician that petitioner had a two-day history of nausea with no vomiting. Pet. Ex. 3 at 21. That evening while sitting at the table, she fainted and hit her face on the table. She then briefly fainted three more times. *Id*. Her mother expressed concern about the syncope as a side effect from the Gardasil. The attending physician advised that "syncope associated with Gardasil occurs within 15 minutes of injection, mechanism appears to be unknown, but felt to be vaso-vagal related to receiving a shot versus from the vaccine itself." *Id*.

The following day, petitioner's history was reported as three syncopal episodes "just prior to arrival to ED." Pet. Ex. 3 at 26. The first episode occurred right after eating dinner. Petitioner reportedly engaged in normal activities that day and had nausea a few days prior, but no fever,

3

vomiting, or diarrhea. *Id*. Petitioner had received the HPV vaccine earlier that day with no issues reported immediately following the vaccination. *Id*. Petitioner was discharged on August 10, 2016. *Id*. at 8-10.

At a follow-up appointment with her primary care physician ("PCP") two days later for syncopal episode after HPV vaccination, her fainting history was documented with no prior history of fainting noted. However, a history of heart "flutter" was noted. Pet. Ex. 4 at 16. Examination was normal but a cardiology follow up was recommended. *Id*.

One month later, on September 10, 2016, petitioner presented to the ER after "passing out" with loss of consciousness, unresponsiveness, and abnormal breathing with breath holding. Petitioner's mother reportedly performed chest compressions and rescue breathing. The episode lasted approximately one minute. In the ER, petitioner was noted to be alert, smiling, and in no distress. ECG and laboratory tests were normal/negative. Pet. Ex. 3 at 67, 70. The impression was probable syncope of unknown cause. She was to follow up with her PCP and a cardiologist. *Id*. at 71.

In a phone call to the PCP on September 12, 2016, petitioner's mother reported "8 episodes of syncope over the past 30 days." Pet. Ex. 1 at 1. She reported that petitioner fainted while in the ER and it was recommended that she be transferred to CHOP, but the family declined. Petitioner's mother was concerned for concussion because she had no appetite and a headache partially resolved with ibuprofen. *Id*. Petitioner's mom again inquired about the HPV vaccination and was told further vaccines would be held until petitioner had a cardiac evaluation. *Id*. at 4.

Petitioner reportedly fainted on the evening of September 13, 2016 and was presented to the PCP the following day for headache that worsened with activity and improved with rest in a dark room. Pet. Ex. 1 at 6-7. The assessment was "multiple episodes of syncope now with concussion." *Id*. at 9.

Petitioner underwent an initial cardiac evaluation at CHOP on September 15, 2016. Her reported history included the first syncope event occurring 4-5 hours after receipt of an HPV vaccine on August 12, 2016. Pet. Ex. 2 at 15. She then started school on August 29, 2016, and reported palpitations but no dizziness or fainting. She had a history of "skipped beats" since ninth grade. *Id*. She reported a family history of encephalitis in the mother in 2010, with the children suffering similar symptoms of dizziness, depression, disorientation, and palpitations. Her family history also included a maternal cousin who died of SIDS. *Id*. at 16. Petitioner's cardiac examination and echocardiogram were normal. The impression was "neurally-mediated or vasodepressor syncope." *Id*. at 17. The doctor added that her condition was complicated by concussion from hitting her head after one of her falls. She was prescribed Florinef. *Id*. The doctor documented a connection between the HPV vaccine and syncope, noting "but it is usually at the time of the shot" and that the connection to recurrent syncope is unclear. The record also includes a referral to Dr. Offit, but no records were filed from that provider. *Id*. at 18.

Petitioner then presented to CHOP Sports Medicine and Performance on September 20, 2016 for treatment of a concussion sustained on September 10, 2016 when she fainted and hit her head. She reported headaches and dizziness. A gradual return to activity was recommended. Pet.

4

Ex. 6 at 3-4. At a follow-up months later, petitioner reported improvement overall but requested an extension for taking her college entrance examinations. *Id*. at 28, 33.

At a cardiology examination on October 26, 2016, petitioner reported ongoing headaches and attending school part-time. Pet. Ex. 2 at 8-9. Her family history at this visit included a great aunt who died of sudden cardiac death. *Id*. at 9. Examination and testing included 24-hour heart monitoring, which was normal. *Id*. at 11. The impression remained "neurally-mediated or vasodepressor syncope." She was directed to continue Florinef and advised to increase her potassium intake. *Id*. at 12.

Petitioner presented for a second opinion regarding her history of fainting and concussion on December 8, 2016. She was back to school and feeling better. She was taking Florinef and salt, but her mother was concerned for postural orthostatic tachycardia syndrome ("POTS"). Dr. Hillman reassured her petitioner's condition was likely vagal and concussion related. The assessment was vaso-vagal reaction, and it was recommended that further immunizations be held for the time being. Pet. Ex. 5 at 6, 9.

On February 14, 2017, petitioner presented to the Nemours Cardiac Center, reporting a "long history of lightheaded spells with abrupt changes in position; however, she had never fainted" until after receipt of the HPV vaccine. Many of her fainting episodes were preceded by palpitations. Pet. Ex. 7 at 2. The assessment was that petitioner had a "fairly convincing" history for neurocardiogenic syncope, and Dr. Temple agreed with the recommendations of her cardiologist. A Holter monitor was suggested again, and she was able to participate in all activities, including driving. *Id*. at 3.

Petitioner returned for evaluation on April 19, 2017 due to dizziness. She had stopped taking Florinef at some point. Pet. Ex. 5 at 31, 13.

Petitioner returned to the Dr. Temple for review of heart monitoring on May 10, 2017. There was one premature atrial contraction (PAC) and one premature ventricular contraction (PVC), with which she reported a skipped beat, but the testing was otherwise normal. Pet. Ex. 7 at 5.

Petitioner fainted four times and presented to the ER on May 24, 2017. She was not sleeping well and not feeling great. Pet. Ex. 3 at 120. Testing was normal and the assessment was "[v]asovagal syncope (History of POTS)". *Id*. at 122.

At a follow-up cardiac examination on May 31, 2017, it was noted that petitioner sometimes forgets to take Florinef, in the evening, which she did with her last syncopal episode. Examination and testing were normal. Pet. Ex. 2 at 1-2. In addition to the continued impression of "neurally-mediated or vasodepressor syncope," Dr. Vetter added that petitioner had postural tachycardia as her standing heart rates are elevated, but not "full blown postural orthostatic tachycardia syndrome at this point." Her Florinef dose was increased. *Id*. at 5.

5

A June 2, 2017 note in the PCP records documented that petitioner fainted while off Florinef and had resumed taking the medication. Pet. Ex. 5 at 42. The record documents petitioner's receipt of a Menactra vaccine on June 8, 2017. *Id.* at 15.

Dr. Vetter's record documented a phone call with petitioner's mother, who advised that petitioner had an eating disorder. Dr. Vetter referred her to an eating disorder clinic, but no records were filed. Pet. Ex. 8 at 334.

Petitioner returned to the PCP in December 2017 for her annual examination. Her mother wanted the meningitis vaccine deferred given her reaction to the HPV. Pet. Ex. 5 at 42, 47, 54-55.

Petitioner's next medical record was a cardiology follow-up with Dr. Vetter on January 18, 2018. Pet. Ex. 8 at 386. She reported having had the flu a few months ago with lightheadedness when bending over and near syncope a few weeks ago. *Id.* An exercise stress test was normal with good blood pressure and no abnormal rhythms. The impression remained neurally-mediated or vasodepressor syncope. *Id.* at 390-91.

At a follow-up for her concussion on April 9, 2018, the symptoms reported in November 2017 had fully resolved. The evaluation was normal, and the assessment included "clinical recovery, resolved physical examination deficits, no symptoms with school or physical activity." Pet. Ex. 6 at 82, 85.

Petitioner presented to the PCP for her college physical on July 24, 2018. Pet. Ex. 5 at 68. She was attending college "pre med." A history of "HPV reaction/POTS" was noted as stable. *Id.* at 68-69.

The following day, petitioner presented to Dr. Vetter for cardiac examination. She reported no dizziness, that her last syncope event was in December 2017, and that she recently began to exercise with weight training and at CrossFit. Pet. Ex. 8 at 463-64. Her ECG was normal but continued use of Florinef was recommended. *Id.* at 467-68.

Petitioner received a meningitis B vaccine on July 30, 2018. Pet. Ex. 5 at 49.

Petitioner returned to Dr. Vetter for cardiology follow-up a year later, on June 12, 2019. She reported no syncope but some mild dizziness. Her ECG was normal. She had stopped taking Florinef approximately a year prior. Dr. Vetter recommended she stay hydrated and keep taking salt. Pet. Ex. 8 at 514, 518.

In October 2019, petitioner's mother contacted the cardiologist to report that petitioner was experiencing skipped heartbeats, fatigue, and other sensations. Pet. Ex. 8 at 545. Petitioner then spoke with the cardiologist, who sent a heart monitor to her at school. *Id.* at 555. The results of the heart monitor indicated the palpitations were associated with sinus rhythm/sinus tachycardia. *Id.* at 571.

6

### III. Discussion

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petition results in compensation, petitioner is entitled to reasonable attorneys' fees and costs. *Id.*; *see Sebelius v. Cloer*, 569 U.S. 369, 373 (2013). Where a petitioner does not prevail on entitlement, a special master has discretion to award reasonable fees if the petition was brought in "good faith" and with a "reasonable basis" for the claim to proceed. § 15(e)(1). A petitioner's good faith is presumed "in the absence of direct evidence of bad faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Where no evidence of bad faith exists and respondent does not challenge petitioner's good faith, good faith requires no further analysis. In the instant case, the undersigned has no reason to believe, and respondent does not argue, that petitioner did not bring her claim in good faith. Therefore, the undersigned finds that petitioner brought her claim in good faith.

### A. Reasonable Basis

#### 1. Legal Standard

In discussing the reasonable basis requirement, the Federal Circuit stressed the prima facie petition requirements of § 11(c)(1) of the Act. *Cottingham ex. rel. K.C. v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1345-46 (Fed. Cir. 2020). Specifically, the petition must be accompanied by an affidavit and supporting documentation showing that the petitioner:

(1) received a vaccine listed on the Vaccine Injury Table;
(2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;
(3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;
(4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and
(5) has not previously collected an award or settlement of a civil action for damages for the same injury.

*Cottingham*, 971 F.3d at 1345-46.

Reasonable basis is an objective inquiry, irrespective of counsel's conduct or a looming statute of limitations, that evaluates the sufficiency of records available at the time a claim is filed. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017); *see Turpin v. Sec'y of Health & Human Servs.*, No. 99-564, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). A special master's evaluation of reasonable basis focuses on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient objective evidence to make a feasible claim for recovery. *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018).

Reasonable basis is satisfied when there is more than a mere scintilla of objective evidence, such as medical records or medical opinions, supporting a feasible claim before filing. *See*

7

*Cottingham*, 971 F.3d at 1346; *see Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)); *see Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012). A recent attempt to clarify what quantifies a "scintilla" looked to the Fourth Circuit, which characterized "more than a mere scintilla of evidence" as "'evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation.'" *Cottingham v. Sec'y of Health & Human Servs.*, 154 Fed. Cl. 790, 795 (2021) (*quoting Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)). Additionally, absence of an express medical opinion of causation is not necessarily dispositive of whether a claim has a reasonable basis. Medical records may support causation even where the records provide only circumstantial evidence of causation. *James-Cornelius on Behalf of E.J. v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1379-80 (Fed. Cir. 2021).

Evaluation of reasonable basis is limited to the objective evidence submitted. *Simmons*, 875 F.3d at 636. Still, a special master is not precluded from considering objective factors such as "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). In *Cottingham*, the Federal Circuit expressly clarified that special masters are permitted to utilize a totality of the circumstances inquiry in evaluating reasonable basis, including, but not exclusively limited to, objective factors such as those identified in *Amankwaa*. *See Cottingham*, 971 F.3d at 1344. The Federal Circuit reiterated that counsel's conduct is subjective evidence not to be considered when evaluating reasonable basis. *Id.* at 1345. Counsel's attempt or desire to obtain additional records before filing is subjective evidence and does not negate the objective sufficiency of evidence presented in support of a claim. *James-Cornelius*, 984 F.3d at 1381. The Federal Circuit has additionally articulated that special masters cannot broadly categorize all petitioner affidavits as subjective evidence or altogether refuse to consider petitioner's sworn statements in evaluating reasonable basis. *Id.* at 1380 (holding that factual testimony, when corroborated by medical records and a package insert, can amount to relevant objective evidence for supporting causation). However, a petitioner's own statements alone cannot support reasonable basis, and special masters may make factual determinations as to the weight of evidence. *See, e.g.*, *Chuisano*, 116 Fed. Cl. at 291; *Foster v. Sec'y of Health & Human Servs.*, No. 16-1714V, 2018 WL 774090, at *3 (Fed. Cl. Spec. Mstr. Jan. 2, 2018); *Cottingham*, 971 F.3d at 1347.

While absent or incomplete records do not strictly prohibit a finding of reasonable basis, an overwhelming lack of objective evidence will not support reasonable basis. *Chuisano*, 116 Fed. Cl. at 288; *see Simmons*, 875 F.3d at 634-36 (holding that reasonable basis was not satisfied where 1) petitioner's medical record lacked proof of vaccination and diagnosis and 2) petitioner disappeared for two years before filing a claim). The objective evidence in the record must also not be so contrary that a feasible claim is not possible. *Cottingham*, 154 Fed. Cl. at 795, citing *Randall v. Sec'y of Health & Human Servs.*, No. 18-448V, 2020 WL 7491210, at *12 (Fed. Cl. Spec. Mstr. Nov. 24, 2020) (finding no reasonable basis when petitioner alleged a SIRVA injury in his left arm though the medical records indicated that the vaccine was administered in petitioner's right arm). A claim may lose reasonable basis as it progresses if further evidence is unsupportive of petitioner's claim. *See R.K. v. Sec'y of Health & Hum. Servs.*, 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1376–77 (Fed. Cir. 1994)).

Though a special master has broad discretion, a special master must keep in mind the Vaccine Act's remedial objective of maintaining petitioners' access to willing and qualified legal assistance, and a special master may not abuse their discretion in denying reasonable basis and fees. *See James-Cornelius*, 984 F.3d at 1381.

### B. Parties' Arguments

Petitioner filed a Motion for Attorneys' Fees and Costs, stating her claim as "the development of syncope within 24-hours after receipt of the Gardasil vaccine, a table injury." Motion at 1, ECF No. 41. She chose to dismiss her claim and filed a Motion for Dismissal Decision on March 25, 2021. *Id.*; *see* ECF No. 38. A Dismissal Decision was issued on March 24, 2021. *See* ECF No. 39.

Petitioner's Motion discussed the relevant law for good faith and reasonable basis, arguing that at the time of the dismissal, the issue of whether this was a Table injury was still pending and needed further fact development: "[t]his fact, and the onset of the syncope and statements in the record support a finding of reasonable basis to bring this claim." Motion at 2-3.

Respondent filed a response, stating that nothing in the Vaccine Act or Vaccine Rule 13 requires that respondent file a response to a request for an award of attorneys' fees and costs. Response at 1, ECF No. 44. However, he deferred to the Court regarding whether the statutory requirements for an award of attorneys' fees and costs were met. *Id*. at 2.

Respondent further deferred to the discretion of the Court as to whether petitioner satisfied the good faith and reasonable basis requirements. *See generally* Response. However, respondent included a footnote that the Court's decision dismissing the petition included a finding that petitioner had not made a Table claim under the Vaccine Act, and "'because there are insufficient medical records supporting petitioner's claim,'" a medical opinion supporting her claim was necessary. Petitioner did not offer an expert opinion and the petition was dismissed. Response at 1 n.1 (citing ECF No. 39 at 2).

Petitioner then filed a reply, relying on the information provided in her Motion and requesting that the Court grant her fees and costs. Reply at 1.

An Order was then issued requiring respondent to file a response to petitioner's Motion specifically addressing good faith and reasonable basis. ECF No. 46.

### 1. Respondent's Supplemental Response

Respondent relied on the facts as set forth in his Rule 4(c) Report, summarizing the most relevant facts in his response. Supp. Response at 1-6, ECF No. 47. Respondent noted that petitioner had not submitted an affidavit, and her mother's affidavit did not address the timing of petitioner's initial episode. *Id*. at 5; Pet. Ex. 9 at 1.

Respondent stated that because petitioner alleged a Table claim, the matter was initially assigned to the SPU. Supp. Response at 5. Respondent recounted the initial status conference held

while in SPU, indicating that the Court raised concerns about the medical records documenting onset of syncope several hours after vaccination, putting onset outside the timeframe for Table vasovagal syncope following HPV vaccine. *Id*.; ECF No. 11 at 1. Petitioner's counsel responded that the first episode of syncope may have occurred in less than an hour after vaccination, that petitioner was still pursuing a Table claim and "'facts are still being developed in this case.'" Supp. Response at 5.

Respondent continued that a year later and after the matter was transferred from SPU, the undersigned raised at another status conference that the medical records documented onset as four to five hours following vaccination. Supp. Response at 5-6; ECF No. 34 at 2. Petitioner's counsel advised that he was still working with the pediatrician to determine what time the vaccine was administered and that the petitioner's mother advised him that petitioner had tunnel vision within an hour of vaccination. *Id*. Because the record consistently documented the first syncope episode as four to five hours after vaccination, petitioner was ordered to file any pediatric records showing the time the vaccine was administered and an affidavit from petitioner of her recollection of onset of syncope following the vaccination. *Id*. Following several extensions, petitioner opted to dismiss her claim. Supp. Response at 6; ECF No. 38.

Respondent argued that petitioner lacked more than a scintilla of objective evidence to support causation and therefore lacked reasonable basis in the filing of the petition. The only evidence presented was counsel's word, which is insufficient to confer reasonable basis. Supp. Response at 8. Respondent explicitly noted that he was not challenging petitioner's good faith in bringing the petition. *Id*. at 8 n.3.

Respondent continued that petitioner "explicitly alleged that 'this is a Table injury case' of the HPV vaccination causing 'neurally-mediated modulated syncope.'" Supp. Response at 8; Petition at 1. However, the Table and the Qualifications and Aids to Interpretation ("QAI") only confer a presumption of causation if the onset of vasovagal syncope occurs within one hour of HPV vaccination and there is no alternative cause. Response at 8; 42 C.F.R. § 100.3(a)(XVI)(C), (c)(13). Here, the medical records document the first episode of syncope four to five hours following receipt of the vaccine. Supp. Response at 9; Pet. Ex. 2 at 15; Pet. Ex. 3 at 17, 21, 26. Petitioner never discounted the accuracy of the medical records. He "merely intimated" that "additional evidence to support the Table claim 'may' be forthcoming," and the "facts were still being developed". Supp. Response at 9; ECF No. 11 at 1.

Respondent argued that the Vaccine Act is clear that petitioner's claims alone are not sufficient to support a finding of entitlement, unsubstantiated by medical records or opinion. Therefore, petitioner's statements on their own are insufficient to establish reasonable basis for a petition. Supp. Response at 9. Further, respondent submits that it was "incumbent on petitioner's counsel to perform a reasonable investigation prior to filing the claim and be able 'to point to evidence' supporting a prima facie case 'in order to establish that a reasonable basis for the claim existed when a petition was filed.'" *Id*. at 10 (quoting *Cottingham*, 971 F. 3d at 1346 (citing 42 U.S.C. §300aa-11(c)(1))).

10

Respondent concluded that with no objective evidence in support of her claim, petitioner lacked reasonable basis in the filing of the petition and reasonable basis was never established. Consequently, fees and costs may not be awarded. Supp. Response at 10.

### 2. Petitioner's Supplemental Reply

Petitioner disagreed with respondent and argued that she submitted objective evidence in support of vaccine causation. Supp. Reply at 1.

Petitioner argued that she demonstrated a reasonable basis for the filing of her petition in that she received a vaccine covered by the Program. Supp. Reply at 2; Pet. Ex. 4 at 15. She filed medical records demonstrating she suffered an injury following vaccination. Supp. Reply at 2; Pet. Ex. 4 at 19; Pet. Ex. 3 at 17. Her medical records demonstrated she suffered from and continued to receive treatment for her vaccine-related injuries for more than six months. Supp. Reply at 2; Pet. Ex. 2 at 1-5. Her medical records show two separate providers linked her injuries to the subject vaccine. Supp. Reply at 2; Pet. Ex. 2 at 18; Pet. Ex. 5 at 9.

Petitioner argued that respondent misstated her burden for establishing entitlement to an award of fees and costs by arguing that petitioner had to prove a Table injury in order to establish a reasonable basis for the filing of her petition. Supp. Reply at 2.

Petitioner asserted that "[t]he fact there was even a colorable question based on the medical record that there was a Table injury claim in this case provided the objective evidence this Court needs to award attorney fees and costs." Supp. Reply at 2.

Further, had petitioner chosen to move forward with her case, she would have provided additional evidence to support her Table claim or the evidence necessary to show the vaccine was the cause of the petitioner's injuries: "[t]he fact that the petitioner chose instead to withdraw her case, instead of pressing forward, does not mean that there was not a reasonable basis for filing the petition in the first place." Supp Reply at 2.

Petitioner concluded that she has shown by more than a scintilla that she received the vaccine and suffered and injury from it, and that there was a link between the vaccine and her injuries, Therefore, a reasonable basis for granting her application for attorneys' fees and cost. Supp. Reply at 2-3.

### IV.   Analysis of Reasonable Basis

Petitioner satisfied the *Cottingham* elements of reasonable basis when she filed facially trustworthy medical records demonstrating that she (1) received a vaccine listed on the Vaccine Injury Table; (2) received the vaccination in the United States; (3) sustained an injury allegedly caused by the vaccine; (4) experienced the residual effects of the injury for more than six months; and (5) has not previously collected an award or settlement of a civil action for damages for the same injury. *Cottingham*, 971 F.3d at 1345-46.

To establish a reasonable basis for attorneys' fees, the burden is lower than the preponderant evidence standard required to prove entitlement to compensation. *Cottingham*, 971 F.3d 1345-46. Petitioner must provide more than a mere scintilla of evidence, defined as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Cottingham*, 154 Fed. Cl. 795 (quoting *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)).

Respondent argues that petitioner failed to meet her burden in establishing that she suffered a Table claim for syncope following the receipt of an HPV vaccination. The Table claim requires onset of syncope within one hour of vaccination, but petitioner's medical records repeatedly document onset of syncope within 4-5 hours following receipt of vaccination. Therefore, petitioner lacked a reasonable basis for filing a Table claim alleging syncope following the HPV vaccine. *See* Supp. Response at 8-9.

Respondent acknowledges that petitioner alternatively alleged causation in fact, but argues that petitioner's counsel repeatedly represented his efforts to prove the Table claim then dismissed the claim when he was unable to do so, suggesting that he abandoned the causation in fact claim. Respondent argues that since the medical records did not support the Table claim when the petition was filed, and no evidence was filed thereafter that supported a Table claim, the claim never had or gained a reasonable basis. Supp. Response at 8 n.4, 9-10.

Reasonable basis requires little more than a mere scintilla of objective evidence to support petitioner's claim; it does not require proof of causation or entitlement. Petitioner's medical records document syncope episodes 4-5 hours after her receipt of the HPV vaccination resulting in head injury, headache, and dizziness. Pet. Ex. 3 at 17, 26; Pet. Ex. 2 at 15. These episodes of syncope continued, resulting in falls, a concussion, subsequent ER visits, inability to attend school full time or participate in typical teenaged activities, continued dizziness and heart palpitations, and required medication and the care of cardiologists and a physician specializing in concussion. Pet. Ex. 3 at 67, 70-71, 120; Pet. Ex. 1 at 1-2, 6, 8-14; Pet. Ex. 2 at 8, 15-18; Pet. Ex. 5 at 6, 9, 31; Pet. Ex. 7 at 2-3, 5; Pet. Ex. 8 at 386, 514. Whether petitioner ultimately would have been able to prove that the HPV vaccine was the cause of her condition is not at issue for purposes of establishing reasonable basis, nor is petitioner's counsel's focus on trying to prove the Table claim. The causation in fact claim alleged in the petition continued to exist, even if the Table claim could not be proven. It is well-established that the reasonable basis standard is lower than the preponderance of evidence standard used to determine causation. *Cottingham*, 971 F.3d at 1345-46; *James-Cornelius*, 984 F.3d at 1379. Based on the medical records, petitioner satisfied the lower burden for reasonable basis even if she was unable to prove the Table claim.

I find petitioner provided sufficient evidence to support a feasible claim of causation for purposes of satisfying the reasonable basis requirements. The contemporaneous medical records show that several of petitioner's treating physicians documented the possibility that the vaccines she received may have played a role in her syncope events even if onset was not within one hour to satisfy the Table requirement and recommended against further vaccination for a time. The attending at the ER on August 9, 2016 advised that syncope associated with Gardasil usually occurs within 15 minutes but noted that the mechanism appears to be unknown and felt it was vaso-vagal related to the receipt of the shot. Pet. Ex. 3 at 21. At a follow-up visit with her PCP, the assessment

was "s/p syncopal episode after HPV vaccination." Pet. Ex. 4 at 16. Petitioner's PCP recommended holding all further immunizations until petitioner had a cardiac evaluation. Pet. Ex. 1 at 4. The cardiologist noted that that there appears to be a connection between Gardasil and syncope, but it usually occurs at the time of the shot. The connection to recurrent syncope was unclear. Pet. Ex. 2 at 18. At a new patient physical in December 2016, the doctor's impression was "[v]aso-vagal reaction" and recommended holding further immunizations at that time. Pet. Ex. 5 at 9. Petitioner later received the Menactra vaccine in June 2017 and the meningitis B vaccine in July 2018, both without event. Pet. Ex. 5 at 15, 49.

The contemporaneous medical records provide what the Federal Circuit determined to be more than a scintilla of evidence for establishing a reasonable basis for a claim. Applying a standard that is any higher would be contrary to the intent of *Simmons*, *Cottingham*, and *James-Cornelius* and not in keeping with the lesser burden established for satisfying the reasonable basis. Thus, I find petitioner has met her burden for a finding of reasonable basis and an award of fees.

Finally, special masters have underscored the importance of awarding attorneys' fees to encourage the participation of competent legal counsel in the Vaccine Program. As the Special Master stated in *Iannuzzi*:

> Simply put, the ultimate purpose of Vaccine Act fees and costs awards is *not* to benefit the *attorneys* involved, but to *ensure that Vaccine Act petitioners will have adequate access to competent counsel*. . . Accordingly, when attorneys spend a reasonable amount of time and costs in representing Vaccine Act petitioners, such attorneys must be fairly compensated for their expenditures, in order to encourage attorneys to participate in future Vaccine Act cases

*Iannuzzi v. Sec'y of Health & Human Servs.*, No. 02-780V, 2007 WL 1032379, at *11 (Fed. Cl. Spec. Mstr. Mar. 20, 2007), *rev'd in part*, 78 Fed. Cl. 1 (2007) (emphasis in original); *see also James-Cornelius*, 984 F.3d at 1381 (in exercising her discretion to award attorneys' fees, the special master must keep in mind the remedial objective of maintaining petitioners' access to willing and qualified legal assistance).

For the aforementioned reasons, I find there was a reasonable basis for filing the petition that continued for the pendency of the matter until it was dismissed.

### V.     Reasonable Attorney's Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs*., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. *Id.* at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours, including those by paralegals, that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Id.* at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioner notice and opportunity to respond. See *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen*, 102 Fed. Cl. at 729.

1. **Reasonable Hourly Rates**

A reasonable hourly rate is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). Rather than being based on the prevailing rate in the forum where petitioner's attorney practices, the rate is based on the forum rate for the District of Columbia. *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). A narrow exception to this forum rule applies "where the bulk of the attorney's work is done outside the forum jurisdiction, and where there is a very significant difference in the compensation rate between the place where the work was done and the forum." *Id.* This exception is known as the *Davis County* exception, and it provides for attorneys' fees to be awarded at local hourly rates. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

*McCulloch* provides a multifactor framework for deciding the reasonable forum rate based on the attorney's experience, overall quality of work performed, and prevailing rates in the program and forum. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *17 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

Petitioner requests the following rates for the work of her counsel, Mr. Mark Sadaka: $376.38 for work performed in 2017, $396 for work performed in 2018, $405 for work performed in 2019, and $422 for work performed in 2020. Fees Motion at 3. The requested rates are reasonable and consistent with what Mr. Sadaka has previously been awarded for his Vaccine Program work. *See Schmacht v. Sec'y of Health & Human Servs.*, No. 18-724V, 2023 WL 6464915 (Fed. Cl. Aug. 21, 2023); *Pudalov v. Sec'y of Health & Human. Servs.*, No. 16-532V, 2023 WL 183397 (Fed. Cl. Jan. 13, 2023). Therefore, I award the rates as requested.

---

[3] The 2015-2023 Fee Schedules can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Human Sers.*, No. 09-923V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

2. **Hours Reasonably Expended**

Attorneys' fees may be awarded for the number of hours reasonably expended during litigation. *Avera*, 515 F.3d at 1348. The special master should use her prior experience and judgement to exclude from the fee calculation hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Unreasonably duplicative or excessive billing can include attorneys billing at attorney rates for clerical work, "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intraoffice communications, attorneys billing excessive hours, attorneys entering erroneous billing entries, [and] attorneys billing excessively for interoffice communications." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 702-703 (2016). Secretarial and clerical tasks such as reviewing invoices and scheduling meetings are not compensable under the Vaccine Program. *See McCulloch*, 2015 WL 5634323, at *26; *Raymo,* 129 Fed. Cl. at 702. Billing for learning about the basic aspects of the Vaccine Program is also not compensable. *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016).

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal. *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Further, attorneys may be compensated for hours traveled at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases); *see also Knox v. Sec'y of Health & Human Servs.*, No. 90–33V, 1991 WL 33242, at *7 (Fed. Cl. Spec. Mstr. Feb. 22, 1991) (finding that "50% of the expert's [travel] time should be compensated"). Ultimately, the special master maintains discretion in awarding fees for reasonable hours expended and "is permitted to reduce attorneys' hours found to be excessive by a percentage." *Raymo,* 129 Fed. Cl. at 702; *see also Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

Upon review of the submitted billing records, the timesheet entries are sufficiently detailed for an assessment of reasonableness, and I find the time billed to be reasonable. Accordingly, petitioner is awarded attorneys' fees in the amount of **$24,466.55.**

3. **Reasonable Costs**

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests a total of $829.18 in costs for acquisition of medical records and filing and postage costs. Fees Motion at 15. I find these costs reasonable and supported with adequate documentation. Therefore, petitioner is entitled to **$829.18**, the full amount of costs sought.

## VI. Conclusion

Based on the foregoing, petitioner's Motion for Attorneys' Fees and Costs is **GRANTED**. Petitioner is hereby awarded **a lump sum of $25,295.73,** representing $24,466.55 in attorneys' fees and $829.18 in costs, **in the form of a check payable jointly to petitioner and petitioner's counsel, Mark Sadaka, Esq.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court is directed to enter judgment in accordance with this Decision.[4]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.